UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JEFFREY STEVEN ADKINS,

      Plaintiff,

v.                            Case No. 2:21-cv-718-MAP

COMMISSIONER OF SOCIAL SECURITY

      Defendant.

_____/

## ORDER

    Plaintiff seeks judicial review of the denial of his claim for disability insurance benefits (DIB).[1]  Plaintiff argues that the Administrative Law Judge (ALJ) committed reversible error by failing to properly consider both his physical and mental subjective complaints.  As the ALJ's decision was not based on substantial evidence and failed to employ proper legal standards as to Plaintiff's physical impairments and limitations, the Commissioner's decision is reversed and remanded.

    *I.    Background*

    Plaintiff, who was born in 1961, claimed disability beginning October 1, 2019 (Tr. 240).  He was 57 years old on the alleged onset date.  Plaintiff obtained less than a high school education, and his past relevant work experience included work as a purchasing manager (Tr. 86-88, 303).  Plaintiff alleged disability due to back pain, a

---

[1]  The parties have consented to my jurisdiction.  *See* 28 U.S.C. § 636(c).

hernia, neck fusion, a rotator cuff issue, sciatic pain, tears in his right knee, scoliosis, and arthritis in his right hand (Tr. 302).

Given his alleged disability, Plaintiff filed an application for DIB (Tr. 238-46). The Social Security Administration (SSA) denied Plaintiff's claims both initially and upon reconsideration (Tr. 114-48, 155-81). Plaintiff then requested an administrative hearing (Tr. 182-83). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 41-94). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 22-40).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2024, and had not engaged in substantial gainful activity since October 1, 2019, the alleged onset date (Tr. 28). After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: lumbar degenerative disc disease with low back pain with muscle spasms and cervicalgia (Tr. 28). Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 30). The ALJ then concluded that Plaintiff retained a residual functional capacity (RFC) to perform light work, except that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk six hours in an eight-hour workday; sit six hours in an eight-hour workday; occasionally climb ladders, scaffolds, ramps, and stairs;

frequently balance; occasionally stoop, kneel, crouch, and crawl; frequently reach in all directions with his right arm; no grasping or manipulative limitations; and no mental health limitations (Tr. 30). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 31).

Considering Plaintiff's noted impairments and the assessment of a vocational expert (VE), however, the ALJ determined that Plaintiff could perform his past relevant work as a purchasing manager (Tr. 34, 86-92). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 34). Given the ALJ's finding, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 11-16, 232-37). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. § 405(g).

## II.   Standard of Review

To be entitled to benefits, a claimant must be disabled, meaning the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."   42 U.S.C. § 423(d)(1)(A).   A "physical or mental

3

impairment" is an "impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520(g)(1).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and

is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014); *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*) (citations omitted).

III.    *Discussion*

Plaintiff argues that the ALJ erred by failing to properly consider Plaintiff's subjective complaints regarding his physical and mental impairments in finding that Plaintiff retained the ability to perform his past relevant work. At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to

perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545. To determine a claimant's RFC, an ALJ makes an assessment based on all the relevant evidence of record as to what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. § 404.1545(a)(1). In rendering the RFC, therefore, the ALJ must consider the medical opinions in conjunction with all the other evidence of record and will consider all the medically determinable impairments, including impairments that are not severe, and the total limiting effects of each. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(2) & (e); *see Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268 (11th Cir. 2019) (*per curiam*) ("Consideration of all impairments, severe and non-severe, is required when assessing a claimant's RFC"); *see Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (stating that the "ALJ must consider the applicant's medical condition taken as a whole"). In doing so, the ALJ considers evidence such as the claimant's medical history; medical signs and laboratory findings; medical source statements; daily activities; evidence from attempts to work; lay evidence; recorded observations; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; the type, dosage, effectiveness, and side effects of any medication or other treatment the claimant takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; any measures the claimant uses or has used to relieve pain or symptoms; and any other factors concerning the claimant's functional limitations and restrictions. 20 C.F.R. §§

404.1529(c)(3)(i)-(vii), 404.1545(a)(3); Social Security Ruling (SSR) 96-8p, 1996 WL 374184 (July 2, 1996); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).

As indicated, in addition to the objective evidence of record, the Commissioner must consider all the claimant's symptoms,[2] including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective evidence and other evidence.  *See* 20 C.F.R. § 404.1529; SSR 16-3p, 2017 WL 5180304, at *2.  A claimant's statement as to pain or other symptoms shall not alone be conclusive evidence of disability, however.  42 U.S.C. § 423(d)(5)(A).  Rather, to establish a disability based on testimony of pain and other symptoms, the claimant must show evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged symptoms or (2) that the objectively determined medical condition can reasonably be expected to give rise to the alleged symptoms.  *Wilson*, 284 F.3d at 1225 (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see* 20 C.F.R. § 404.1529.  Consideration of a claimant's symptoms thus involves a two-step process, wherein the SSA first considers whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the claimant's symptoms, such as pain.  20 C.F.R. § 404.1529(b); SSR 16-3p, 2017 WL 5180304, at *3-9.  If the SSA determines that an underlying physical or mental impairment could reasonably be expected to produce the claimant's symptoms, the SSA evaluates the intensity and persistence of those symptoms to determine the

---

[2]  The regulations define "symptoms" as a claimant's own description of his or her physical or mental impairment.  20 C.F.R. § 404.1502(i).

extent to which the symptoms limit the claimant's ability to perform work-related activities. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *3-9. When the ALJ discredits the claimant's subjective testimony, the ALJ must articulate explicit and adequate reasons for doing so. *Wilson*, 284 F.3d at 1225 (citation omitted). A reviewing court will not disturb a clearly articulated finding regarding a claimant's subjective complaints supported by substantial evidence in the record. *See Mitchell*, 771 F.3d at 782; *Foote v. Chater,* 67 F.3d 1553, 1562 (11th Cir. 1995) (*per curiam*) (citation omitted).

A.    *Physical*

Plaintiff first argues that the ALJ erred in considering Plaintiff's physical impairments and limitations. More specifically, Plaintiff contends that the ALJ did not properly consider several factors set forth in 20 C.F.R. § 404.1529(c)(3) or other factors, such as Plaintiff's self-reported statements regarding his limitations; the objective medical evidence; Plaintiff's treatment, including the type, dosage, side effects, and effectiveness of medications and other treatment modalities; the duration, frequency, and intensity of pain and precipitating and aggravating factors; Plaintiff's activities of daily living; statements from Plaintiff's wife as to Plaintiff's functionality; and Plaintiff's excellent work history. While the ALJ need not refer to every treatment note, the ALJ must demonstrate that he considered Plaintiff's medical condition as a whole and provide substantial evidence in support of the decision. *See Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1326 (11th Cir. 2021) (stating that the ALJ need not cite every piece of evidence in the record but must demonstrate he or she

"considered the claimant's medical condition as a whole"); *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (*per curiam*) (finding that there is no rigid requirement that the ALJ specifically address every piece of evidence in the decision so long as the ALJ's decision was not a broad rejection).  Though the ALJ likewise did not need to address every factor set forth in 20 C.F.R. § 404.1529(c)(3) or otherwise, several of the ALJ's findings and omissions call into question whether the ALJ considered Plaintiff's medical condition taken as a whole.

At step two, the ALJ found Plaintiff's lumbar disc disease with low back pain with muscle spasms and cervicalgia to constitute Plaintiff's only severe impairments (Tr. 28).  The ALJ then determined that Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were not substantiated by the record based upon Plaintiff's imaging, findings on examination of 5/5 with normal gait and strength, treatment history with Plaintiff not undergoing recommended lumbar surgery, activities of daily living, Dr. Gary Correnti's statement that Plaintiff could return to work without restrictions, and Plaintiff's statement that he used the proceeds of the work claim settlement to pay off his wife's car instead of getting medical care (Tr. 31).  Several of the bases the ALJ cited for discounting Plaintiff's statements regarding his physical impairments and limitations do not accurately reflect what the record detailed.

Namely, during the administrative hearing, Plaintiff indicated that he had been on pain medication for more than 15 years and was currently taking three morphine pills per day along with oxycodone, meloxicam, and methocarbamol for pain as well

as medical marijuana to try to reduce his narcotic intake (Tr. 53-55). He also stated that he underwent four surgeries in the prior 15 years for his rotator cuff, a hernia, a scrotal cyst, and a cervical fusion (Tr. 57-58). According to Plaintiff, he required a second cervical surgery to address the cervical discs above and below the fusion, but he could not afford that surgery as he had no income (Tr. 58). Additionally, in April 2019, when Plaintiff was prescribed Oxycontin and believed he was well enough to work, he suffered a back injury on the job after he briefly attempted to go back to work following a prior period of disability and for which surgical intervention was needed (Tr. 55-59). Plaintiff indicated that he had also injured his rotator cuffs again by working, and, at that point, he had two tears on his left and one tear on his right, for which he likewise needed surgical intervention (Tr. 58-59, 67-68).

In August 2019, Plaintiff informed Dr. Correnti of his plans to go on a cruise with his wife and have lumbar surgery following the cruise (Tr. 720). Dr. Correnti noted that, from a neurological perspective, Plaintiff had no restrictions and could continue to work full duty until surgery unless it became unbearable, at which point the surgery would need to be scheduled sooner (Tr. 720). The ALJ cited to Plaintiff's statement regarding taking a cruise with his wife as indicative of Plaintiff's limitations not being as severe as alleged (Tr. 32, 720). During the administrative hearing, however, Plaintiff stated that he and his wife canceled the cruise because Plaintiff was physically unable to go (Tr. 64-65). Plaintiff also explained Dr. Correnti's statement regarding Plaintiff's ability to perform work with no restrictions until the surgery (Tr. 31, 65, 720). Given Plaintiff's injuries at the time, including injuries to his back and

rotator cuffs, Plaintiff believed there was no further damage that could occur (Tr. 65). Consequently, he asked Dr. Correnti to remove any work restrictions because his employer would not let him work in any capacity, including a limited capacity with such restrictions, and he was trying to keep his job (Tr. 65). In the end, Plaintiff tried to continue to work but was unable to do so because of his injuries (Tr. 65).

The ALJ also cited to Plaintiff's decision to use money that he received through worker's compensation for a needed surgery to pay off his wife's car instead of for medical care as evidence of the fact that Plaintiff was not as limited as alleged (Tr. 31). As Plaintiff made clear during the hearing, he did so because issues arose with the worker's compensation claim,[3] the cost of surgery exceeded the worker's compensation payment provided, he needed several surgeries that he could not afford without an income, and, most importantly, he was trying to avoid bankruptcy, stating:

> I paid my wife's car off. I figured I'd still have the $20,000 in my IRA if I'd have to use that for surgery, but I did that because I had no income, and I was trying to eliminate a bill so I could, you know, we didn't go bankrupt. But I – I haven't had any income since October of last year. I haven't had any income at all.

(Tr. 58-59, 65-68).

Beyond the mischaracterization of the evidence, the ALJ also omitted any meaningful discussion of Plaintiff's use of potent narcotics to treat his constant and severe pain (Tr. 25-34). To reiterate, Plaintiff took three morphine pills per day with

---

[3] Dr. Correnti's contemporaneous treatment notes seem to support Plaintiff's statements, indicating that Plaintiff had been scheduled for surgery but because Dr. Correnti determined that Plaintiff's "pre-existing condition was 80% of the problem and the major contributing cause," worker's compensation canceled his surgery (Tr. 717).

oxycodone, meloxicam, and methocarbamol as well as medical marijuana to try to treat his pain (Tr. 670, 687, 770, 790, 792, 798, 841). The ALJ's failure to address the use of those narcotics to relieve his pain, with mixed notes regarding the efficacy of such treatment, leaves a gap in the ALJ's analysis that warrants reconsideration. Given these deficiencies, the ALJ's decision is not supported by substantial evidence. Accordingly, remand is warranted to reconsider Plaintiff's physical impairments in light of the evidence of record, and the decision on remand should include discussion of Plaintiff's medication regimen and any side effects affecting Plaintiff's ability to perform work-related activities.

> B.    *Mental*

Plaintiff also contends that the ALJ failed to properly consider his mental impairments and limitations. At step two, the ALJ found Plaintiff's unspecified depressive disorder, adjustment disorder with mixed anxiety and depressive mood, uncomplicated bereavement, and alcohol use disorder in sustained remission, considered singly and in combination, did not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities and therefore concluded those impairments were non-severe (Tr. 28-29). In considering the effects of Plaintiff's mental impairments, the ALJ determined that Plaintiff experienced no limitation in his ability to understand, remember, or apply information; no limitation in his ability to interact with others; mild limitation in his ability to concentrate, persist, or maintain pace; and mild limitation in his ability to adapt or manage himself (Tr. 29). Such

findings properly led to the ALJ's conclusion that Plaintiff's mental impairments were not severe.  *See* 20 C.F.R. § 404.1520a(d)(1).

Going further, the ALJ provided a more detailed assessment of Plaintiff's mental impairments at step four in setting forth the RFC finding (Tr. 32-33).  *See Schink*, 935 F.3d at 1269 (acknowledging that the RFC determination requires a "more detailed assessment" of a claimant's mental functioning).  Specifically, the ALJ stated:

> Mentally, the claimant's debilitating allegations are inconsistent with the objective medical record evidence.  The evidence strongly supports no severe mental impairments with no more than mild limitations.  On neurosurgical examination, Dr. Correnti found the claimant pleasant, conversant, alert, and oriented.  On consultative physical examination, the claimant reported being under a lot of stress[,] and Dr. Kibria found the claimant anxious and depressed, but fully oriented and cognitively intact.  The claimant underwent a consultative psychological examination in March 2020 with Cheryl Kasprzak, Psy.D., with the claimant denying treatment with a psychiatrist or psychotherapist, but reporting being overwhelmed due to family losses with frustration and memory problems.  Dr. Kasprzak found the claimant with normal mood, flat affect, cooperative, normal thought content and thought process, clear speech, relevant content, oriented, estimated average intellectual ability, normal immediate memory, below average recent memory, average remote memory, normal attention and concentration, and adequate insight and judgment.  The claimant was assessed with unspecified depressive disorder, adjustment disorder with mixed anxiety and depressed mood, uncomplicated bereavement, and alcohol use disorder in sustained remission.
>
> The claimant reported activities of daily living of performing personal care, driving, paying bills, managing banking accounts, watching television, and washing dishes.  The claimant reported to Dr. Correnti that he was scheduled to go on a cruise in October 2019.

(Tr. 32-33) (internal citations omitted).  In concluding the RFC analysis, the ALJ reiterated that the findings related to Plaintiff's mental impairments were supported by the opinions of the state agency psychologists, who opined that Plaintiff had no severe

mental impairments with no more than mild limitations, and that those opinions were supported by findings on examination, Plaintiff's lack of mental health treatment, and Plaintiff's daily activities (Tr. 34).

As the ALJ articulated, the evidence did not support a finding that Plaintiff's mental impairments were severe.  As an initial matter, the record includes no mental health treatment notes.  Indeed, during the administrative hearing, Plaintiff confirmed that he had not received any mental health treatment, although he also noted that he had been told he needed to seek such treatment but had not received word from the Veterans Administration regarding receiving such mental health treatment (Tr. 75).  Additionally, most of the treatment notes addressing Plaintiff's mental capabilities indicated unremarkable findings, including presenting as pleasant, conversant, alert, oriented, in no acute distress, cognitively intact, and denying anxiety, a depressed mood, or any psychiatric condition while showing normal thought content and process, clear speech, average intellect, cooperative attitude, normal immediate memory, no memory loss, average remote memory, normal attention, normal concentration, adequate insight, and adequate judgment (Tr. 32-33, 724, 771, 777, 786, 791, 794, 797, 800, 841, 844, 847, 850, 853, 856, 859).  Even on the occasions when Plaintiff appeared anxious and overtly depressed, he presented as fully oriented and cognitively intact (Tr. 771, 777).[4]

_____

[4]  Plaintiff takes issue with the ALJ's purported failure to discuss evidence for and against a finding of disability and the ALJ's selective view of the evidence.  The ALJ's discussion of Plaintiff's mental impairments and limitations includes evidence for and against a finding of disability and notably omits reference to an unfavorable finding.  Namely, even though the

Going further, as the ALJ stated, the state agency medical consultants each found Plaintiff's mental impairments non-severe and causing only mild limitations, as the evidence of record did not support greater limitations (Tr. 33, 122-24, 139-41). State agency medical consultants are considered highly qualified experts in the Social Security disability evaluation process. 20 C.F.R. § 404.1513a(b)(1). Although the ALJ did not need to afford their opinions any special deference, the ALJ properly found the opinions of the state agency medical consultants persuasive since the opinions were supported by findings on examination, treatment history, and activities of daily living (Tr. 33).

To that end, the ALJ pointed to Plaintiff's ability to perform personal care, drive, pay bills, manage bank accounts, watch television, and wash dishes as indicative of his ability to mentally function at a greater level than alleged. Indeed, in evaluating a claimant's complaints, the ALJ may consider the claimant's daily activities. 20 C.F.R. § 404.1529(c)(3)(i). As the Eleventh Circuit has cautioned, however, everyday tasks are hardly indicative of a claimant's ability to function in a work environment. *Schink*, 935 F.3d at 1266. In this instance, Plaintiff's ability to perform such activities of daily living provided just one factor supporting the ALJ's finding that Plaintiff's mental impairments were not as severe as alleged. Based on the foregoing,

---

ALJ chose not to reference the portion of Dr. Cheryl Kasprzak's disability evaluation report regarding malingering, it should be noted that Dr. Kasprzak indicated that Plaintiff's score on the test for malingering fell above the recommended cutoff score for identification of suspected malingering (Tr. 787). She elaborated that Plaintiff endorsed a high frequency of symptoms that were highly atypical in patients with genuine psychiatric or cognitive disorders, which raised the suspicion of malingering (Tr. 787).

the ALJ provided substantial evidence in support of his finding that Plaintiff's mental impairments were not severe.

Notwithstanding, it does not appear that the ALJ properly factored in whether Plaintiff's pain and potent medication regimen would cause mental or cognitive limitations.  Again, Plaintiff indicated that he took three morphine pills per day, oxycodone, meloxicam, and methocarbamol and used medical marijuana, which caused him difficulty with staying focused and with his memory (Tr. 315). Accordingly, on remand, the ALJ should address Plaintiff's mental impairments, including any mental limitations relating to Plaintiff's pain and any cognitive limitations related to Plaintiff's medications and how such limitations affect Plaintiff's ability to work.

*IV.   Conclusion*

For the foregoing reasons, the ALJ failed to apply the correct legal standards, and the ALJ's decision is not supported by substantial evidence.  After consideration, it is hereby

ORDERED:

1.     The decision of the Commissioner is REVERSED and the matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further administrative proceedings consistent with this Order.

2.     The Clerk is directed to enter final judgment in favor of Plaintiff and close the case.

DONE AND ORDERED in Tampa, Florida, on this 27th day of March, 2023.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

cc:     Counsel of Record